UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Dean Maxwell, as Special Administrator of the Estate of Teneal Washington and Takala Roundtree, as the surviving daughter of deceased Teneal Washington,<br><br>Plaintiffs,<br><br>v.<br><br>College Hills Opco, LLC. and Campbell Street Services LLC,<br><br>Defendants. | Case No. 24-2061-HLT-GEB |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel Production of Alleged Privileged Documents Improperly Withheld (ECF No. 80) seeking to discover attachments to approximately fifty (50) emails produced by Co-Defendant College Hills Opco, LLC ("College Hills") through written discovery. College Hills' Privilege Log identifies these emails and attachments as CASPER reports related to the nursing home's quality rating. College Hills asserts the attachments are protected from discovery by the peer review and quality assurance privileges. After review of Plaintiffs' Motion (ECF No. 80), College Hills' Response (ECF No. 91), and the documents provided for *in camera* review, the Court **DENIES** Plaintiffs' Motion **(ECF No. 80)**.

1

I.  **Background**

This wrongful death and negligence matter stems from the decedent's stay and subsequent death on January 20, 2023 at College Hills' nursing home, Legacy at College Hill.[1] Plaintiffs allege Defendants' negligent care for the decedent resulted in her death from an avoidable pressure injury.[2] Defendants deny the allegations. Co-Defendant, Campbell Street Services LLC is alleged to be responsible for owning, operating, managing, maintaining, and exercising control over the nursing home in question, but was not involved in the discovery dispute now before the Court.

On March 28, 2025, Plaintiffs contacted the Court regarding a discovery dispute involving email attachments to roughly fifty (50) emails produced by College Hills during written discovery, who supplemented their production, as required, with a Privilege Log. The Privilege Log identifies the contested documents as protected from discovery for the following reasons: 1) the document is not directly related to decedent, "Teneal Washington or any of Plaintiffs' claims;" 2) the documents are "[i]rrelevant and/or not reasonabl[y] calculated to lead to discovery of admissible evidence;" 3) "[t]he request for information is nothing more than a fishing expedition;" 4) "[q]uality assurance function with public policy concern protection;" 5) "[p]eer review and/or risk management privileges apply;" and 6) "Plaintiffs' request for certain emails is overly burdensome and/or not proportional to the needs of the case."

---

[1] ECF No. 33.
[2] *Id*.

In consideration of the informal dispute as advised by the parties, and in conjunction with some potential relevance to the discovery, the Court ordered Plaintiffs to file a formal Motion to Compel no later than April 7, 2025, and for College Hills to provide all relevant documents for *in camera* review along with their Response (ECF No. 78). After requesting extension of time to respond, College Hills responded to the motion on May 2, 2025 and provided the documents to the Court for *in camera* review. After thorough review of all the documents provided to the Court for inspection, and hearing on the motion, the motion is now ripe for determination.

## II.     Legal Standard

As the parties are aware, relevancy at the discovery stage is broad.[3] However, the relevancy of particular discovery does not trump privilege protections.[4] Where a party seeks to withhold otherwise discoverable information on the basis of privilege, Fed. R. Civ. P. 26(b)(5)(A) requires the creation of a privilege log.[5] College Hills' Privilege Log asserts two relevant privileges apply to the CASPER reports: 1) the state peer review privilege; and 2) the federal quality assurance privilege, both of which are created by statute. The Court has diversity jurisdiction over this matter and parties do not dispute Kansas law applies to the assertions of peer review privilege.[6]

---

[3] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001).
[4] *Mike v. Dymon, Inc.*, No. 95-2405-EEO, 1996 WL 674007, at *11 (D. Kan. Nov. 14, 1996).
[5] *Billings v. ManorCare of Wichita, KS LLC*, No. 21-2295-KHV, 2022 WL 4016572, at *3 (D. Kan. Sept. 2, 2022).
[6] Fed. R. Evid. 501; *Y.R. ex rel. Reyes v. Bob Wilson Mem'l Grant Cnty. Hosp.*, No. 10-1312-JTM, 2011 WL 2038547, at *2 (D. Kan. May 24, 2011).

Kansas has adopted a peer review privilege, as set forth in K.S.A. 65–4915(b). This statute creates a privilege for materials submitted to or generated by health care providers, peer review committees, or officers.[7] K.S.A. 69–4915(b) provides, in pertinent part: "the **reports** [emphasis added], statements, memoranda, proceedings, findings and other records submitted to or generated by peer review committees or officers shall be privileged and shall not be subject to discovery, subpoena or other means of legal compulsion for their release to any person or entity or be admissible in evidence in any judicial or administrative proceeding."

The federal statute, 42 C.F.R. § 483.75, mandates nursing homes establish a Quality Assurance and Performance Improvement (hereinafter "QAPI") program. The statute explicitly requires certain members of the facility to be involved in the quality assurance committee; "members must include a) Director of Nursing, b) Medical Director or designee, c) at least three staff members, one of which must be the Administrator, board member or owner, and d) the Infection Control Officer."[8] The statute provides "[a] State or the Secretary **may not require disclosure of the records of such committee except in so far as such disclosure is related to the compliance of such committee with the requirements of this section** [emphasis added]."[9]

---

[7] *Slattery v. Mishra*, No. 13-1058-JAR, 2014 WL 1309070, at *2 (D. Kan. Mar. 31, 2014).
[8] 42 C.F.R. § 483.75(g).
[9] 42 C.F.R. § 483.75(h).

The decision in *Adams v. St. Francis Reg. Med. Ctr.*, 264 Kan. 144, 955 P.2d 1169 (Kan. 1998) is the governing law regarding the application of Kansas' peer review statute.[10] It holds, although the interest in creating a statutory peer review privilege is strong, it is outweighed by the fundamental right of the plaintiffs to have access to all the relevant facts.[11] *Adams* mandates the District Court has a duty to conduct an *in-camera* inspection and craft a protective order which will permit the plaintiffs access to the relevant facts within the documents alleged to be privileged.[12] However, this review and redaction process is a constitutional due process protection for plaintiffs raised only when the facts at issue in the contested discovery have significant constitutional implications.[13] Plaintiffs hold the burden of demonstrating the facts at issue "go to the heart of their claims."[14]

## III. Discussion

Plaintiffs assert the CASPER reports are discoverable because, "[e]ven if similar information exists elsewhere," discovery generally entitles parties to review relevant documents.[15] Additionally, Plaintiffs rely on the *Adams* case and assert the privilege cannot be used a sword and a shield, and the underlying facts in the attached reports are

---

[10] *See Hennessey v. U. of Kansas Hosp. Auth.*, No. 21-2231-EFM, 2024 WL 521711, at *5 (D. Kan. Feb. 9, 2024).
[11] *Adams v. St. Francis Reg. Med. Ctr*, 264 Kan. 144, 173, 955 P.2d 1169, 1188 (Kan. 1998).
[12] *Adams*, 264 at 174.
[13] *Hennessey v. U. of Kansas Hosp. Auth.*, No. 21-2231-EFM, 2024 WL 521711, at *5–6 (D. Kan. Feb. 9, 2024); *Slattery*, 2014 WL 1309070, at *4.
[14] 264 Kan. at 173; 2014 WL 1309070, at *4.
[15] *Spieker v. Quest Cherokee, LLC*, No. 07–1225–EFM, 2009 WL 2168892, at *4 (D. Kan. 2009).

discoverable over College Hills' privilege objection.[16] And, if not discoverable in their entirety, discoverable in a redacted form after *in camera* review.[17]

College Hills asserts they submit all the data gathered in their facility, per the federal statute, to CMS and they generate the CASPER reports for peer review by their quality assurance committee. Due to the confidential nature of the reports, CMS limits and monitors access to the CASPER reports. College Hills then uses the reports in their efforts to perform peer review functions outlined in the Kansas statute (K.S.A. 65-4915) and to improve quality measures under the federal quality assurance statute (42 C.F.R. § 483.75).

In this case, the Court does not find the CASPER reports raise the kind of constitutional due process concerns the *Adams* court was confronted with. In *Adams*, depositions were quashed as privileged, leading to the necessity of the written discovery.[18] But here, no depositions have been quashed to date, Plaintiffs have been allowed to pursue other written discovery on the underlying facts, and Plaintiffs themselves admit these facts may be available in other forms.[19] The majority of Plaintiffs' relevance arguments in their brief address financial documents, which, after conferral, College Hills subsequently produced relevant to punitive damages. And, after meaningful conferral, the parties determined the remainder of the disputed documents, other than the CASPER reports, were not relevant to the claims.[20]

---

[16] 264 Kan. at 174.
[17] *Id*.
[18] 264 Kan. at 160.
[19] *Hennessey*, 2024 WL 521711, at *5.
[20] ECF No. 91 at 3-4.

Specifically, regarding the CASPER reports, Plaintiffs assert they contain critical information about pressure ulcer rates, falls, and other quality measures directly related to Ms. Washington's injuries. While some of the documents do contain information on pressure ulcers in quality assurance metrics the facility submitted to CMS, the summary reports as a whole involve patients other than the decedent, other quality metrics not relevant to Plaintiffs' claims, were created directly in compliance with the state peer review and federal quality assurance statutes and were marked confidential as such.

This Court, through the course of discovery, has not quashed a single deposition topic proposed by Plaintiffs and has allowed extensive written discovery to date on pressure unclers, quality assurance measures, and staffing at the facility. In fact, the Court recalls receiving a call during a deposition where the Court allowed Plaintiffs to pry as far as possible into an incorrect data entry made by a nurse at the facility, the ground level data gathered at the facility for the quality assurance reports. Plaintiffs have access to the data summarized in the reports in other forms, through the plethora of other documents produced so far in written discovery, as well as through deposition testimony. Thus, Plaintiffs cannot overcome the peer review statutory privilege to view the exact reports explicitly intended to be protected by statute.

Where Defendants met their burden to establish the peer review privilege applies to the process and generation of the exact CASPER reports in question, the Court finds Plaintiffs failed to meet their burden under *Adams* to demonstrate the reports go to the heart of their claims and warrant dispensing of the statutory privilege. And, from a public policy standpoint, there is a compelling public interest in nursing homes compiling and

7

continually reviewing these types of reports.[21] Nursing homes may not compile reports in this form under the statute for internal quality review if Courts allow plaintiffs to use the reports in litigation every time one of the quality metrics, such as a pressure ulcer or UTI, is a fact in a case. So, while the Court initially strongly considered the possibility of redaction as suggested in *Adams*,[22] and after an exhaustive in-depth review of the statutory provisions and the applicable caselaw together with the documents provided to the Court *in camera*, the Court finds there is an absence of justification to parse the reports down to the single column of relevant quality metric to Plaintiffs' claims. When the potential necessity and relevance of the reports are weighed against the adequately plead statutory privileges intended to allow College Hills to summarize their quality metrics in the CASPER reports, the Court, in its' sound discretion, precludes disclosure. The Court finds the state peer review privilege applies to the CASPER reports.

The Court also considered the application of the quality assurance privilege under federal statute 42 C.F.R. § 483.75. Where, Plaintiffs make no allegation College Hills violated 42 C.F.R. § 483.75, the Court also finds the statutory quality assurance privilege is equally applicable.[23] Since both statutory privileges are applicable to the CASPER reports, and Plaintiffs failed to establish the reports are the only means of obtaining

---

[21] *See* 264 Kan. at 160-61; *See also Sunshine Haven Nursing Operations, LLC v. U.S. Dept. of Health and Human Services, Centers for Medicare & Medicaid Services*, 742 F.3d 1239, 1256 (10th Cir. 2014) (holding the purpose of § 483.75 is to encourage the kind of systemic actions that can improve quality of care).

[22] 264 Kan. at 174.

[23] *See Sunshine Haven*, 742 F.3d at 1256 (finding the statute does not insulate facilities from specific factual allegations of findings of noncompliance with § 483.75(o)).

information at the heart of their claims, Plaintiffs' Motion **(ECF No. 80)** is hereby **DENIED**.

    **IT IS SO ORDERED.**

Dated July 2, 2025, at Wichita, Kansas.

s/ Gwynne E. Birzer  
GWYNNE E. BIRZER  
U.S. Magistrate Judge
